# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **GENE CINTRON AND ERIN WALTON,** | § | |
| **individually and on behalf of all others** | § | **CASE NO. 12-cv-11064-JLT** |
| **similarly situated;** | § | |
| | § | |
| **Plaintiffs,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **vs.** | § | |
| | § | |
| **BJ'S WHOLESALE CLUB, INC.** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## FINAL APPROVAL OF SETTLEMENT

Michael A. Josephson
State Bar No. 24014780
FIBICH, HAMPTON, LEEBRON,
BRIGGS & JOSEPHSON, LLP
1150 Bissonnet
Houston, Texas 77005
Telephone:    713-751-0025

Philip J. Gordon (BBO #630989)
Kristen M. Hurley (BBO #658237)
GORDON LAW GROUP LLP
585 Boylston Street
Boston, Massachusetts 02116
Telephone:    617- 536-1800

**ATTORNEYS-IN-CHARGE FOR PLAINTIFFS**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................iv-vi

I.      INTRODUCTION ................................................................................... 1-4

II.     OVERVIEW ............................................................................................ 4

III.    THE SETTLEMENT .............................................................................4-9

        1.      DESCRIPTION OF THE FINAL SETTLEMENT CLASSES UNDER
                THE FLSA AND FED. R. CIV. P. 23……….…………………..………...4-5

                a.      PUTATIVE FLSA CLASS ...………..………....……….....................4

                b.      PUTATIVE STATE LAW CLASS.. ……..……….....………...…..….4-5

        2.      SETTLEMENT AMOUNT ..……….………..……….……..…………… 5

        3.      ATTORNEY'S FEES AND COSTS ………………………………... ....6

        4.      PAYMENTS TO NAMED CLASS REPRESENTATIVES ..……..……………… 6

        5.      FEES, COSTS AND EXPENSES OF THE ADMINISTRATOR … ………..………6

        6.      FEES ASSOCIATED WITH MEDIATION …..………..……..………. ..…..6

        7.      DISTRIBUTION TO CLASS MEMBERS ………. …………………………6-8

        8.      TIMING OF PAYMENTS BY DEFENDANT TO AUTHORIZED
                CLAIMANTS, ADMINISTRATOR AND CLASS COUNSEL…..……….……….8

        9       Release of Claims…..……………..……..…….……...…..9

IV.     THE PARTIES COMPLIED WITH THE SETTLEMENT TERMS
        GOVERNING ADMINISTRATION OF NOTICE, OPT OUT, OPT-IN
        AND OBJECTIONS PROCESS ........................................................9-10

V.      FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ....... 10-20

        1.      THE SETTLEMENT SHOULD BE GIVEN FINAL
                APPROVAL BY THE COURT ………………..……….……………....10-11

        2.      THE STANDARDS FOR PRELIMINARY
                APPROVAL UNDER FED. R. CIV. P. 23 ………..……..…………11-19

          A.      All of the standards for final approval have been met..............13-19

      3.      THE STANDARDS FOR FINAL APPROVAL
            UNDER THE FLSA …….…………………….…………..…………..…19-20

VI.    FINAL CERTIFICATION OF SETTLEMENT CLASSES IS APPROPRIATE.........20-25

      1.      THE ELEMENTS OF RULE 23(A) ARE
            SATISFIED FOR SETTLEMENT PURPOSES ..………....………....……………..21

          A.      Numerosity ...………….………….……..………....……....21

          B.      Commonality ...………….………..………....….……..….……....21-22

          C.      Typicality ...………….……….…….……..………....………..22-23

          D.      Adequacy ...………….………..………..……….…..….……..….……..23

      2.      THE REQUIREMENTS FOR A CLASS UNDER
            FED. R. CIV. P. 23(B)(3) HAVE BEEN SATISFIED .……..………..……….. 24-25

VII.   THE COURT SHOULD GIVE FINAL APPROVAL TO THE
      SERVICE AWARDS TO THE NAMED PLAINTIFFS............................................25-26

VIII.  FINAL APPROVAL OF PAYMENT TO CAA IS WARRANTED ............................. 26

IX.    CONCLUSION..................................................................................... 27

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods. v. Windsor*,
521 U.S. 591, 617 (1997)......................................................................... 12, 20, 24-25

*Austin v. Pennsylvania Dep't of Corrs.*,
876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ................................................. 18

*Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
671 F. Supp. 819, 822-833 (D. Mass. 1987)............................................. 13

*Churchill Village, LLC v. Gen. Elec.*,
361 F.3d 566, 575 (9th Cir. 2004) ............................................................ 9

*Cotton v. Hinton*,
559 F.2d 1326, 1331 (5th Cir.1977) ......................................................... 12

*Dietrich v. Bauer*,
192 F.R.D. 119, 127 (S.D.N.Y. 2000) ...................................................... 24

*Fisher Brothers v. Phelps Dodge Indus., Inc.*,
604 F. Supp. 446 (E.D. Pa. 1985) ............................................................. 18

*Gen. Tel. Co. of Southwest* v. *Falcon*,
457 U.S. 147, 157 n.13 (1982).................................................................. 23

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011, 1019 (9th Cir. 1998) ........................................................ 21, 23-25

*Hochschuler* v. *G.D. Searle & Co.*,
82 F.R.D. 339, 348- 49 (N.D. Ill. 1978) .................................................. 24

*In re Apollo Group Inc. Securities Litigation*,
2012 WL 1378677, *3 (D. Ariz. April 20, 2012) ...................................... 15

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*,
410 F. Supp. 659 (D. Minn. 1974)............................................................. 18

*In re Lupron Mktg. & Sales Practices Litig.*,
228 F.R.D. 75, 93 (D. Mass. 2005)........................................................... 13

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52, 71-72 (D. Mass. 2005) ..................................................... 12-13

*In re Sugar Industry Antitrust Litig.,*
73 F.R.D. 322, 344 (E.D. Pa. 1976)............................................................ 24

*In re Telectronics Pacing Systems,*
172 F.R.D. 271, 287-88 (S.D. Ohio 1997)................................................. 24

*In re Tyco Intern, Ltd.,*
535 F.Supp.2d 249, 258-259 (D. N.H. Dec. 19, 2007) ........................... 12

*Lerwil v. In-flight Motion Pictures, Inc.,*
582 F.2d 507, 512 (9th Cir. 1978) ............................................................. 23

*Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor,*
679 F.2d 350, 1353 (11th Cir.1982) .......................................................... 19

*McClain v. Lufkin Ind., Inc.,*
No. 9:97CV63, 2009 WL 5814124 at \*4 (E.D. Tex. Dec. 22, 2009) ......... 26

*Mullen v. Treasure Chest Casino, LLC,*
186 F.3d 620, 624-25 (5th Cir. 1999) ...................................................21-23

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797, 811-12 (1985) ....................................................................... 9

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc.* v. Anderson,
390 U.S. 414, 424-25 (1968) ..................................................................... 11

*Rolland v. Patrick,*
562 F. Supp. 2d 176 (D. Mass. 2008) ....................................................... 13

*Ross v. Citizens Bank, N.A.,*
667 F.3d 900, 908 (7th Cir. 2012) ............................................................ 21

*Ruiz v. McKaskle,*
724 F.2d 1149, 1152 (5th Cir.1984) ......................................................... 18

*San Antonio Hispanic Police Officers' Organization, Inc. v. City of San Antonio,*
188 F.R.D. 433, 459 (W.D. Tex. 1999) ..................................................... 16

*Seidman v. Am. Mobile Sys.,*
965 F. Supp. 612, 619 (E.D. Pa. 1977) ..................................................... 15

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541, 2545 (2011) .................................................................... 21

*Williams v. First Nat'l Bank,*
216 U.S. 582, 595 (1910) ........................................................................................ 10

*Young v. Katz,*
447 F.2d 431 (5th Cir.1971) .................................................................................... 12

*Youngblood v. Family Dollar Stores, Inc.,*
2011 U.S. Dist. LEXIS 115389, at *8 (S.D.N.Y. Oct. 4, 2011) ................................ 22

*Zinberg v. Washington Bancorp, Inc.,*
138 F.R.D. 397, 405 (D.N.J. 1990) .......................................................................... 21

## STATUTES

29 U.S.C. §201 ............................................................................................................ 1

29 U.S.C. §216(b) .................................................................................................2-4, 19

Fed. R. Civ. P. 23 .......................................................................................... 2, 4, 11, 20

Fed. R. Civ. P. 23(a) ............................................................................................ 20, 23

Fed. R. Civ. P. 23(a)(1) .............................................................................................. 21

Fed. R. Civ. P. 23(a)(2) ..........................................................................................21-22

Fed. R. Civ. P. 23(a)(3) ..........................................................................................22-23

Fed. R. Civ. P. 23(b)(3) .................................................................................... 12, 20, 24

Fed. R. Civ. P. 23(e) ........................................................................................3, 9-12, 19

4 Newberg on Class Actions (4th ed.2002) .......................................................... 9, 18

MANUAL FOR COMPLEX LITIGATION, FOURTH (2004) ....................................... 9, 12, 26

Plaintiffs Gene Cintron and Erin Walton, individually and on behalf of other similarly situated employees (collectively referred to as "Named Plaintiffs" or "Representative Plaintiffs"), file this Unopposed Motion for Final Approval of Settlement and in support would show as follows:

## I.   <u>INTRODUCTION</u>

Plaintiffs seek final approval of a $2,700,000.00 settlement consisting of current and former Loss Prevention Managers ("LPM"), Asset Protection Managers ("APM"), and/or Personnel Managers ("PM") who worked for Defendant BJ's Wholesale Club, Inc. (hereinafter, "Defendant" or "BJ's") in stores located throughout the United States during the relevant statutory time periods.  The settled claims at issue pertain to the classification of the LPM, APM, and/or PM position under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.* and the analogous state wage and hour laws, or common laws, of Connecticut, Delaware, Florida, Georgia, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, and/or Virginia.

This Court granted preliminary approval of the settlement on August 12, 2013.  ECF No. 30.  The key terms of the Settlement preliminarily approved by this Court, and for which final approval is now requested, include the following:

1.   Defendant agrees to pay a maximum gross settlement amount of up to Two Million, Seven Hundred Thousand dollars ($2,700,000.00) (the "Maximum Gross Settlement Amount") to resolve all disputes and differences between Plaintiffs and BJ's up to the date of "Preliminary Approval."   *See* ECF No. 28, Ex. A, Stipulation and Settlement Agreement, at §§ I(V), V.[1]

---

[1]     Plaintiff expressly incorporates the exhibits attached to Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement.  *See* ECF No. 28.

2.    For purposes of settlement only, have agreed that the following classes (the "Settlement Classes") can be certified pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, respectively:

    a.    <u>PUTATIVE FLSA CLASS</u>

        "Any and all persons employed by Defendant as a Loss Prevention Manager, Asset Protection Manager, and/or Personnel Manager from July 19, 2009 through and including the date of entry of the Preliminary Approval Order." *Id.* at § I(II).

    b.    <u>PUTATIVE STATE LAW CLASS</u>

        "Any and all persons employed by Defendant as a Loss Prevention Manager, Asset Protection Manager, and/or Personnel Manager in Connecticut, Delaware, Florida, Georgia, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, and/or Virginia from July 19, 2009 through and including the date of entry of the Preliminary Approval Order." *Id.* at § I(JJ).

3.    Payment of attorney's fees in an amount not to exceed 33% of the Maximum Gross Settlement Amount to Fibich, Hampton, Leebron, Briggs & Josephson, LLP and Gordon Law Group ("Class Counsel"). In addition, Class Counsel shall be entitled to the reasonable and necessary costs incurred through the final approval of the settlement.  All such sums are to be paid from funds included in the Maximum Gross Settlement Amount.  *Id.* at §§ I(I), VII.

4.    Payment of service awards in the amount of $5,000.00 to each of the two Named Plaintiffs, which are also are to be paid from funds included in the Maximum Gross Settlement Amount.  *Id.* at §§ I(QQ), VIII.

5.    Payment of the reasonable fees, costs and expenses incurred by Class Action Administration in serving as the Claims Administrator, with the amount to be paid from funds included in the Maximum Gross Settlement Amount.  *Id.* at § I(G, V), XII(B).

6.    All reasonable fees, costs, and travel-related expenses incurred by private mediator Michael A. Dickstein, Esq. (the "Mediator"), appointed by this Court in its Order dated September 24, 2012, with the amount to be paid from funds included in the Maximum Gross Settlement Amount. *Id.* at § I(V, W).

7.    The Maximum Gross Settlement Amount paid by Defendant shall be "all inclusive," including payments to Authorized Claimants; service awards; approved attorneys' fees, costs and expenses as approved by the Court; the reasonable fees, costs, and expenses incurred by the Claims Administrator in connection with settlement and claims administration; the reasonable fees, costs, and travel-related expenses incurred by the Mediator, except that Defendant shall be responsible for paying all employer-paid withholding and payroll taxes and similar expenses including FUTA and the employer's share of FICA and Medicare taxes as required by law with respect to settlement payments to members of each proposed class. *Id.* at §§ I(V), V.

As shown below, the Settlement is fair, reasonable, and confers a substantial benefit upon the Settlement Class.  The Settlement, including those provisions applicable to the notice process and claim's administration has been diligently implemented since preliminary approval.  The reaction of the Class Members has been overwhelmingly positive and 678 individuals claiming approximately 80% of the Revised Maximum Gross Settlement Amount, have timely participated.  *See* Declaration of Jason Dekdebrun on behalf of CAA ("Dekdebrun Decl.") at ¶¶12-11(*sic*), attached as Ex. 1. No individuals have objected to the terms of the Settlement or otherwise elected to opt-out. Moreover, the average individual payout to Authorized Claimants will be $2,023. Because all of the applicable standards for final approval under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e) had been overwhelmingly satisfied, Plaintiffs request that the

Court enter an order granting final approval of the terms of the Settlement.

## II.   OVERVIEW

This $2,700,000.00 settlement resolves all current and potential litigation concerning the classification of the LPM, APM, and/or PM positions for the period from July 19, 2009 through August 12, 2013 (the date of preliminary approval).

The settlement is the product of substantial formal and informal investigations, conference calls, meetings and an all-day mediation with Michael Dickstein, a well-known and experienced wage and hour mediator, followed by exhaustive post-mediation negotiations conducted by the parties. The parties have expended considerable time and resources investigating the various claims and defenses asserted in this case.  Thus, it can unequivocally be said that this settlement is the result of arm's length bargaining by competent counsel with extensive wage and hour experience, and a high level of familiarity and understanding of the relevant facts and legal issues applicable to these cases. The parties believe that the settlement is fair and reasonable and should be given final approval.

## III.   THE SETTLEMENT

The details of the settlement are contained in the Stipulation and Settlement Agreement attached to the preliminary approval motion. A summary follows:

### 1.   DESCRIPTION OF THE FINAL SETTLEMENT CLASSES UNDER THE FLSA AND FED. R. CIV. P. 23

In accordance with 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and the terms of the settlement, the following classes should be given final approval by this Court:

a. <u>PUTATIVE FLSA CLASS</u>

"Any and all persons employed by Defendant as a Loss Prevention Manager, Asset Protection Manager, and/or Personnel Manager from July 19, 2009 through and including entry of the Preliminary Approval Order. "

4

      b.  <u>PUTATIVE STATE LAW CLASS</u>

> "Any and all persons employed by Defendant as a Loss Prevention Manager, Asset Protection Manager, and/or Personnel Manager in Connecticut, Delaware, Florida, Georgia, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, and/or Virginia from July 19, 2009 through and including entry of the Preliminary Approval Order."

ECF No. 28, Ex. A, Stipulation and Settlement Agreement, at § I(II-JJ, PP).

    **2.**    **SETTLEMENT AMOUNT**

The proposed settlement obligates Defendant to pay a maximum potential settlement amount of $2,700,000.00, which is "all inclusive." *Id.* at §§ I(V), V. Except as set forth below, under no condition will Defendant's liability for payments exceed this amount. (*Id.*) All claims submitted by members of the each class set forth above, and all attorneys' fees, costs, expenses, mediation costs and claims administration expenses shall be paid out of the Maximum Gross Settlement Amount. (*Id.*) In addition to the Maximum Gross Settlement Amount, Defendant shall be responsible for paying all employer-paid withholding and payroll taxes and similar expenses (including the employer's share of state and federal income taxes, social security contributions and unemployment taxes) including FUTA and the employer's share of FICA and Medicare taxes as required by law with respect to settlement payments to members of each proposed class. (*Id.*)

Individuals who submit a timely and valid Claim and Consent to Join Form, Substitute IRS W-9 Form and Appendix A (Release of Claims) ("Claim Form Package") and Named Plaintiffs, shall be solely responsible for the reporting and payment of the employee's share of any federal, state, and/or local income tax or other tax or any other withholdings, if any, on any of the payments made pursuant in accordance with this settlement. *Id.* at §§ V(E).

3.     ATTORNEY'S FEES AND COSTS

Class Counsel will file an application for an award of attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of the consolidated lawsuits and the finalization of this global settlement.   The fees requested will not exceed 33% of the Maximum Gross Settlement Amount.  *Id.* at §§ I(I), VII.

4.     PAYMENTS TO NAMED CLASS REPRESENTATIVES

Named Plaintiffs will each receive a $5,000.00 service award from the Maximum Gross Settlement Amount in addition to their share of the settlement as members of one or more of the proposed classes.  *Id.* at §§ I(QQ), VIII.  Plaintiffs seek final approval of these service award payments.

5.     FEES, COSTS AND EXPENSES OF THE ADMINISTRATOR

The parties agreed to, and sought Court approval for, the appointment of CAA as the settlement and Claims Administrator.  In its Order dated August 12, 2013, the Court appointed CAA as Claims Administrator.  (Dkt. 30, ¶ 16).  The reasonable fees, costs and expenses of the Claims Administrator shall be paid out of the Maximum Gross Settlement Amount.  *Id.* at § I(G, V), XII(B).  Plaintiffs seek final approval of these payments.

6.     FEES ASSOCIATED WITH MEDIATION

The reasonable fees, costs and travel-related expenses incurred by the Mediator in connection with the mediation of this action shall be paid out of the Maximum Gross Settlement Amount.  *Id.* at § I(V, W).  Plaintiffs seek final approval of these payments.

7.     DISTRIBUTION TO CLASS MEMBERS

Plaintiffs seek final approval of the following formulas which will be used for the distribution of any compensation to Authorized Claimants:

Individuals who timely and correctly submitted a Claim Form Package ("Authorized Claimant") will be entitled to a share of the Revised Maximum Gross Settlement Amount. The Revised Maximum Gross Settlement Amount consists of the Maximum Gross Settlement Amount less the Class Counsel's attorneys' fees and costs, mediation costs, administrative costs, and service awards. *Id.* at § I(NN).

Authorized Claimants will be compensated from the sum arrived at from the Revised Maximum Gross Settlement Amount based on his/her workweeks in a covered position during his/her applicable statutory time period based on the following formula:

> The Revised Maximum Gross Settlement Amount shall be divided by the gross number of weeks of employment in a Loss Prevention Manager, Asset Protection Manager, or Personnel Manager position by all members of the Settlement Classes from July 19, 2009 (or, for any individual member of the Settlement Classes who filed with the Court a written consent to join the Litigation before July 19, 2012, the date that is three years prior to the date on which his or her consent was filed with the Court, as reflected on the Court's docket), through and including the date the Court enters its Preliminary Approval Order to establish a "per week" amount. Each member of the Settlement Classes shall be eligible to receive a potential Settlement Payment in amount equal to the "per week" amount multiplied by the number of weeks that individual was employed by Defendant in a Loss Prevention Manager, Asset Protection Manager, or Personnel Manager position from July 19, 2009 (or, for any individual member of the Settlement Classes who filed with the Court a written consent to join the Litigation before July 19, 2012, the date that is three years prior to the date on which his or her consent was filed with the Court, as reflected on the Court's docket), through and including the date the Court enters its Preliminary Approval Order.

*Id.* at § VI(C).   Moreover, the following formula will be used for the distribution of any compensation to the Authorized Claimants:

> Fifty percent (50%) of the total payment to that Authorized Claimant shall be deemed payment in settlement of claims for unpaid overtime or other wages and is subject to appropriate deductions and withholdings for wages by the Claims Administrator.  Fifty percent (50%) shall be deemed payment in

settlement of claims for liquidated damages, interest, and all other non-wage income.

*Id.* at § VI(Q).

Defendant shall fund the settlement only up to the extent necessary to cover all claims, and Defendant shall retain any portion of the Revised Maximum Gross Settlement Amount not paid out as individual settlement awards to Authorized Claimants to the extent that such payments equal or exceed 50% of the Revised Maximum Gross Settlement Amount (which the parties expect will be the case). *Id.* at § V(D), VI(O).

8.    TIMING OF PAYMENTS BY DEFENDANT TO AUTHORIZED CLAIMANTS, ADMINISTRATOR AND CLASS COUNSEL

Plaintiff also seeks final approval of the terms of payment earlier preliminarily approved by this Court. A summary of these terms are as follows:

Within 5 calendar days of the Final Effective Date, Defendant shall pay to the Claims Administrator, the amount needed to pay Authorized Claimants and Class Counsel's attorneys' fees, costs and expenses. *Id.* at § VI(O).

Within 7 calendar days of the Final Effective Date, the Claims Administrator shall pay Class Counsel's court-approved attorneys' fees, costs and expenses. *Id.* at § VII(E).

Within 30 calendar days of the Final Effective Date, the Claims Administrator shall mail to each Authorized Claimant at his/her last known address, or updated address if obtained, his/her individual settlement payment and a copy of the Final Approval Order. *Id.* at § VI(P).

Within 45 calendar days of the Final Effective Date, the Claims Administrator shall mail to Plaintiff Cintron and Plaintiff Walton his/her individual service payment, if approved by the Court. *Id.* at § VIII(B).

9.      RELEASE OF CLAIMS

In exchange for the settlement, Authorized Claimants and members of the State Law Putative Classes who do not opt-out[2] shall release Defendant from all wage related claims asserted or that could have been asserted in these lawsuits up to the date of Preliminary Approval.  *See generally id.* at § IX. A detailed description of the claims released was referenced in the Class Notice that was earlier approved by the Court and that was provided to members of the Settlement Classes as Appendix A to the Claim Form Package.

Plaintiff seeks final approval of the terms of the release.

## IV.   THE PARTIES COMPLIED WITH THE SETTLEMENT TERMS GOVERNING ADMINISTRATION OF NOTICE, OPT-OUT, OPT-IN AND OBJECTIONS PROCESS

To protect the rights of absent class members, the court must provide the best notice practicable to class members of a potential class action settlement.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  *See*, *e.g.*, 4 *Newberg on Class Actions* (Fourth) §§ 8.21, 8.39; *Manual for Complex Litigation Fourth* (Fed. Judicial Center 2004) §§ 21.311-21.312.

The settlement preliminarily approved by this Court set forth a fair and reasonable notice process which complied with the requirements of Fed. R. Civ. P. 23(e).  As shown below, this process was carried out without delay or difficulty.

On October 18, 2013, per this Court's August 12, 2013 Order, CAA mailed a copy of the (a) Official Notice of Settlement of Class and Collective Action; (b) personalized Claim and

---

[2]      As noted above, the Claims Administrator did not receive notice of any opt-out from the State Law Putative Classes by the December 18, 2013 deadline set by the Court.

9

Consent to Join Form; (c) Substitute IRS W-9 Form; and (d) Appendix A - Release of Claims to 995 Class Members. Dekdebrun Decl. at ¶3.  Also pursuant to the August 12, 2013 Order, CAA also mailed a reminder postcard to those Class Members who not already returned a claim form on November 18, 2013.  *Id.* at ¶4.

Additionally, throughout the notice period, CAA, Class Counsel and Defendant's Counsel were in constant contact.  CAA provided the attorneys weekly updates concerning mailings, re-mailings, claim rates, and disputes.  CAA also investigated claims, claimants and responded to numerous inquiries from the parties and the Class Members.

Based on the data compiled by CAA, 678 individuals representing claiming approximately 80% of the Revised Maximum Gross Settlement Amount will receive payments as part of this settlement.  *Id.* at ¶11(*sic*).  Importantly, no Class Members objected to the settlement or otherwise excluded themselves from participating by seeking to opt-out from the Putative State Law Classes.  *Id.* at ¶6.  According to CAA, the average value of any individual claim is approximately $2,023.00.  *Id.* at ¶11(*sic*).

Following any final approval, CAA will continue to work with the parties and members of the Settlement Classes to facilitate and coordinate payments to Authorized Claimants and settlement correspondence, and will continue to respond to inquiries from members of the Settlement Classes.

## V.      **FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

### 1.      THE SETTLEMENT SHOULD BE GIVEN FINAL APPROVAL BY THE COURT

Plaintiffs seek *final* approval of the Stipulation and Settlement Agreement under both the FLSA and Fed. R. Civ. P. 23(e). "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910).  Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial

resources.  The ultimate determination whether a proposed settlement warrants approval resides in the Court's discretion. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424-25 (1968).

As demonstrated below, both Plaintiffs and Defendant believe that that the terms of the Stipulation and Settlement Agreement preliminarily approved by this Court are fair and reasonable and in the best interests of all parties given the risks of litigation.  All of the requirements and standards for final approval have been met or exceeded.  The response of members of the Settlement Classes to the settlement was overwhelmingly positive and appreciative.  Indeed, not one Class Member objected and numerous members of the Settlement Classes chose to participate. Thus Plaintiffs submit that final approval is warranted.

### 2.    THE STANDARDS FOR FINAL APPROVAL UNDER FED. R. CIV. P. 23

As part of the Stipulation and Settlement Agreement, and Plaintiffs' First Amended Complaint, Plaintiffs sought the certification of various classes under the wage and hour laws, and/or common laws, of Connecticut, Delaware, Florida, Georgia, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, and/or Virginia.  Fed. R. Civ. P. 23 provides the mechanism for certifying a class action, including, as here, through a class certified for settlement purposes.  Specifically, Fed. R. Civ. P. 23(e) states:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> > (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> >
> > (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

11

    (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

    (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

    (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

In determining whether final approval is warranted, the primary issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the proposed settlement should be given to putative class members and a hearing scheduled to determine final approval. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, §13.14, at 172-73 (2004) ("MANUAL FOURTH") (at the preliminary approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.").

The gravamen of an "approvable" proposed settlement is that it be "fair, adequate, and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977) (citing *Young v. Katz,* 447 F.2d 431 (5th Cir.1971)). "[T]here is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement." *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 71-72 (D. Mass. 2005) (internal quotations omitted); *In re Tyco Intern, Ltd.*, 535 F.Supp.2d 249, 258-259 (D. N.H. Dec. 19, 2007). As a result, the courts in the First Circuit typically rely on a number of factors, the most common of which include: (1) the complexity, expense, and duration of

litigation; (2) the amount of the proposed settlement compared to the amount at issue; (3) reaction of the class to the settlement; (4) the stage of proceedings and the amount of discovery completed; (5) the plaintiffs' likelihood of success on the merits and recovering damages on their claims; (6) whether the agreement provides benefits which the plaintiffs could not achieve through protracted litigation; (7) good faith dealings and the absence of collusion; (8) the settlement's terms and conditions. *See, e.g., Rolland v. Patrick*, 562 F. Supp. 2d 176 (D. Mass. 2008); *In re Relafen Antitrust Litig.*, 231 F.R.D. at 72; *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005); *Berenson Co. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 822-833 (D. Mass. 1987).

### A.    All of the standards for final approval have been met

#### (1)    The complexity, expense, and duration of litigation.

It goes without saying that misclassification class and collective actions involving challenges to corporate-wide human resources practices are complex.  As discussed above, both parties are represented by counsel with extensive experience in handling these cases.  Such cases often require, as here, the review of countless statutes, regulations, and case law.  The parties are required to analyze and litigate issues concerning liability, damages, certification, discovery and a host of other issues which are unique to wage and hour litigation.  There are few "bright line" tests, and, as such, this type of litigation can be very challenging and difficult.

Moreover, there is no reason to doubt that further litigation would be both costly and time consuming.  Both parties have already expended considerable time and resources investigating the claims at issue.  Each side felt strongly about their respective positions, and without a settlement, the parties would have vigorously prosecuted and defended the relevant claims. Hundreds of hours of attorney and paralegal time have been consumed during the pendency of this lawsuit.  The parties conducted numerous conference calls, and exchanged countless emails

and correspondence both before and after mediation.  Without a settlement, there is no doubt that the parties would continue litigating this lawsuit for quite some time with the same tenacity.

(2)     *The amount of the proposed settlement compared to the amount at issue.*

Plaintiffs submit that the settlement of $2,700,000.00 is fair and offers each member of the Settlement Classes the opportunity to recover a meaningful amount of compensation representing several hours of alleged unpaid overtime for each of the weeks that they worked as an APM, LPM and/or PM during the relevant time period.  Without a settlement, the members of the Settlement Classes, who Defendant contends were properly classified as employees exempt from the overtime requirements of the FLSA and applicable state laws, may not have been able to recover any unpaid overtime compensation, much less several hours of unpaid overtime for each week worked.

Additionally, the formulas described above that will be used to determine the final amounts available to Authorized Claimants are reasonable, are consistent with other wage and other settlements approved by Courts in this district and others, and applied in a manner which does not discriminate against any members of the Settlement Classes.

Finally, the reasonableness of the settlement is underscored by the fact that Defendant has various defenses to the merits of the dispute and the calculation of damages which, if successful, would shorten the applicable statute of limitations, preclude the payment of overtime at one and one-half times the regular rate of pay, prevent the recovery of liquidated (or double) damages, and/or eliminate certain statutory and civil penalties.  Moreover, had the parties not reached a settlement, Defendant would have vigorously fought class certification of any state law class (and/or conditional certification of any FLSA collective which), had Defendant been successful, could have potentially forced each member of the Settlement Classes to pursue their claims on an individual basis—a difficult option for many who lack the financial resources to pursue litigation

14

against a corporation like Defendant.

All of these reasons further support why this proposed settlement is fair and reasonable and in the best interests of the members of the Settlement Classes and all parties involved.

*(3)     The reaction of the class*

Here, Class Counsel and the Named Plaintiffs support the settlement and believe that it's fair and reasonable, and in the best interests of all parties.  Class Counsel's opinion is validated by the fact that over 675 individuals came forward and timely participated in the settlement. Further, in addition to the significant claims' rate, Class Counsel and his staff have also had the opportunity to communicate with members of the Settlement Classes concerning the settlement, the claim value, and the litigation as a whole.  These discussions have confirmed that members of the Settlement Classes are pleased with the settlement and support its final approval.

Furthermore, not one member of the Settlement Classes served an objection to the settlement, the terms or Class Counsel's request for attorneys' fees and costs during the notice process.  This further shows that the settlement was well received and is reasonable.  *See In re Apollo Group Inc. Securities Litigation*, 2012 WL 1378677, *3 (D. Ariz. April 20, 2012) ("There have been no objections from Class Members or potential class members, which itself is compelling evidence that the Proposed Settlement is fair, just, reasonable and adequate.") Finally, no members of the Settlement Classes elected to exclude themselves from the Putative State Law Classes and, thus, the settlement.   This is also testament to the fairness and reasonableness of the settlement as a whole.

*(4)     The stage of proceedings and the amount of discovery completed*

This prong of the analysis "captures the degree of case development that class counsel have accomplished prior to settlement."  *Seidman v. Am. Mobile Sys.,* 965 F. Supp. 612, 619 (E.D. Pa. 1977).  However, the "[s]ufficiency of information does not depend on the amount of

15

formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *San Antonio Hispanic Police Officers' Organization, Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999).

In this case, the parties have been working towards an amicable resolution since May 2012.  During this time period, the parties engaged in substantial informal discovery, including but not limited to in-person meetings, witness interviews and the sharing of confidential documents.  Both sides thoroughly investigated the facts, defenses and relevant legal authorities. Additionally, prior to mediating the case, the parties exchanged lengthy confidential mediation briefs summarizing the facts, law and the damage calculations at issue.  No stone was left unturned and each side was provided with ample information.

Thus, there can be no dispute that the parties thoroughly investigated the relevant facts and legal issues through every means available.  Such an undertaking yielded substantial information which allowed the parties to discuss intelligently and freely the pros and cons of settlement.

     *(5)*    *The plaintiffs' likelihood of success on the merits and recovering damages on their claims*

Class Counsel has carefully assessed the probability of ultimate success on the merits and the risks of establishing liability and damages. While Class Counsel certainly believes that the misclassification claims against Defendant are strong and could be proven at trial, a finding of liability is never assured, especially in complex litigation.  Even with what Plaintiffs believe is a strong factual and legal case, the members of the Settlement Classes face significant risks in establishing liability and damages. Further risks exist as they relate to certification of a Rule 23 class (or an FLSA collective), overcoming attempted decertification and surviving an inevitable

appeal. Indeed, substantial risks and uncertainties were present from the outset of this case that made it far from certain that any relief for the members of the Settlement Classes would be obtained.

Class Counsel's view on the probability of any success on the merits was certainly influenced by the fact that Defendant has legal and factual grounds available to defend this action.  For example, other employers have prevailed in litigation concerning the classification of similar positions to the positions held by the members of the Settlement Classes.  At a minimum, these decisions potentially provide Defendant with a good faith basis for the exempt classification of the positions at issue.  Similarly, through informal discovery, Defendant provided evidence of steps it has taken to investigate the classification of the positions at issue. The existence of such evidence certainly bolsters Defendant's defense to liquidated damages and willfulness, two issues which if resolved in Defendant's favor, would undoubtedly have had a detrimental impact on the damages available to the members of the Settlement Classes.

While Class Counsel understandably takes issue with the viability of some of these alleged defenses, the risks associated with the continued litigation of the misclassification claims at issue simply cannot be disregarded in measuring the reasonableness of the settlement.

       *(6)*   *Whether the agreement provides benefits which the plaintiffs could not achieve through protracted litigation*

The settlement provides the members of the Settlement Classes with meaningful compensation for alleged unpaid hours of work without any of the delays inherent in protracted litigation.  Indeed, through settlement both parties were able to resolve their differences without costly appeals and litigation which would have drained resources and prolonged the resolution of this litigation.  Similarly, the settlement allows the parties to avoid the uncertainty of appeals, trials or potentially adverse rulings.

*(7)      Good faith dealings and the absence of collusion*

There are no allegations or indications of fraud or collusion. *See Ruiz v. McKaskle,* 724 F.2d 1149, 1152 (5th Cir.1984) (determining that "[i]n the absence of fraud or collusion, the trial court should be hesitant to substitute its own judgment for that of counsel"); *see also* 4 Newberg on Class Actions (Fourth) § 11:51 (4th ed.2002) (there is a presumption of no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary).

Further, it is beyond dispute that this settlement was the result of arm's-length negotiations, conducted by experienced counsel for all parties and after more than sufficient discovery and litigation had been undertaken. Indeed, prior to engaging in settlement discussions, the parties engaged in substantial informal discovery. Each side independently and thoroughly investigated the claims and defenses at issue. This preparation and familiarity with the facts and law surrounding the classification of the positions at issue allowed both parties to intelligently, and in good faith, weigh both the risks and benefits of continued litigation.

Moreover, the settlement was negotiated by attorneys who have been vigorously prosecuting and defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

Further, the parties prepared for and engaged in formal mediation. The mediation process involved countless pre-mediation conferences, data sharing and discussions concerning the potential scope of any proposed settlement. The parties ultimately conducted a full-day mediation conference in Boston with Michael Dickstein, a well-known and highly respected wage and hour mediator. The mediation did not immediately resolve all of the issues in the case and the parties continued negotiations for several more months. Ultimately an agreement was reached that provides substantial relief for all members of the Settlement Classes.

(8)   <em>The settlement's terms and conditions</em>

As discussed above, the terms and conditions of the settlement are reasonable, fair and consistent with numerous other wage and hour settlements negotiated by Class Counsel and counsel for Defendant. The terms provide both parties with comprehensive relief and are the product of extensive negotiations, multiple drafts and years of experience litigating similar cases.

Accordingly, all of the standards for final approval under Fed. R. Civ. P. 23(e) have been met and the settlement should be given final approval by this Court.

**3. THE STANDARDS FOR FINAL APPROVAL UNDER THE FLSA**

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee ... affected in the amount of unpaid wages, or their unpaid overtime compensation, as the case may be ...." 29 U.S.C. § 216(b). FLSA claims may be compromised where a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor*, 679 F.2d 350, 1353 (11th Cir.1982). If a settlement in an employee FLSA suit does reflect "a reasonable compromise over issues," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

19

For all of the foregoing reasons set forth in the section addressing the Fed. R. Civ. P. 23 standards, this settlement is a fair and reasonable compromise and should be given final approval under the FLSA as well.

## VI.   FINAL CERTIFICATION OF SETTLEMENT CLASSES IS APPROPRIATE

Pursuant to the Stipulation and Settlement Agreement, and in accordance with the model of other similar wage and hour cases that counsel have settled in the federal courts, the parties have stipulated, for settlement purposes only, to the following Settlement Classes:

    a.  PUTATIVE FLSA CLASS

"Any and all persons employed by Defendant as a Loss Prevention Manager, Asset Protection Manager, and/or Personnel Manager from July 19, 2009 through and including entry of the Preliminary Approval Order."

    b.  PUTATIVE STATE LAW CLASS

"Any and all persons employed by Defendant as a Loss Prevention Manager, Asset Protection Manager, and/or Personnel Manager in Connecticut, Delaware, Florida, Georgia, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, and/or Virginia from July 19, 2009 through and including entry of the Preliminary Approval Order."

ECF No. 28, Ex. A, Stipulation and Settlement Agreement, at § I(II-JJ).

Courts are authorized to adjudicate class-wide claims based on a common course of conduct. The United States Supreme Court in *Amchem Products, Inc. v. Windsor*, addressed the settlement class issue. *Amchem Prods.*, 521 U.S. at 591, 617. The Court held that a district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management, but that the other requirements for certification must still be satisfied. *Id.* at 620. Thus, any request for approval of a class settlement should include a section on why certification would be appropriate, albeit within the context of a settlement. Each of the requisites for final class certification are satisfied here. Fed. R. Civ. P. 23(a) and (b)(3).

1.    THE ELEMENTS OF RULE 23(A) ARE SATISFIED FOR SETTLEMENT PURPOSES

   A.    **Numerosity**

The numerosity requirement is met if the class is so large that joinder of all members would be impractical.  Fed. R. Civ. P. 23(a)(1).  In determining whether a plaintiff has satisfied the numerosity requirement, a court may consider factors including the size of the class, geographical dispersion, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim.  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624-25 (5th Cir. 1999) (finding 100 to 150 members sufficiently numerous for class certification) (citation omitted).  *Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity.").

In this case, the parties estimate that the Putative State Law Class consists of hundreds of class members in multiple states.  This is sufficient to satisfy the numerosity requirement, as joinder of this many parties would be impracticable.

   B.    **Commonality**

Fed. R. Civ. P. 23(a)(2) requires questions of law and fact to be common to the class.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) ("*Dukes*").  This requirement is permissively construed.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id.*  "Their claims must depend upon a common contention of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2545; *Ross v. Citizens Bank, N.A.*, 667 F.3d 900, 908 (7th Cir. 2012) (in context of state wage and hour off-the-

clock claim: "To satisfy the commonality element, it is enough for plaintiffs to present just one common claim.") (citing *Dukes*, 131 S. Ct. at 2556); *see also Mullen*, 186 F.3d at 625 ("The test for commonality is not demanding and is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members"); *Youngblood v. Family Dollar Stores, Inc.*, 2011 U.S. Dist. LEXIS 115389, at *8 (S.D.N.Y. Oct. 4, 2011) (court certified retail store manager misclassification claim because the "the crux of [the] case is whether . . . company-wide policies, as implemented, violated Plaintiffs" statutory rights");

Here, primary questions of law and fact central to the claims against Defendants include:

    a.     Whether Defendant employed the Class Members within the meaning of the applicable statutes, including the FLSA;

    b.     Whether the Class Members were uniformly, willfully and wrongfully classified by Defendant as exempt from overtime compensation;

    c.     Whether Defendant failed to pay the Class Members all premium overtime compensation due to them by virtue of their uniform designation as exempt;

    d.     Whether the Class Members were expected to, and/or were mandated to, regularly work overtime hours each workweek;

    e.     Whether Defendant failed to pay the Class Members for all hours worked;

    f.     Whether Defendant violated any other statutory provisions regarding compensation due to the Class Members; and

    g.     Whether the Class Members have sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, Plaintiffs assert that the proposed Class Members share sufficient commonality to satisfy Fed. R. Civ. P. 23(a)(2).

### C.    <u>Typicality</u>

To satisfy the typicality requirement Fed. R. Civ. P. 23(a)(3), the proposed named plaintiffs must show that his or her claims "are typical of the claims or defenses of the class."

Fed. R. Civ. P. 23(a)(3).   The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest* v. *Falcon,* 457 U.S. 147, 157 n.13 (1982).   The test for typicality focuses on the similarity between the named plaintiff's legal and remedial theories and the theories of those whom they purport to represent.  *Mullen*, 186 F.3d at 625 (citation omitted).   Representative claims are "typical" if they are reasonably co-extensive with those of absent class members but do not have to be substantially identical.  *Hanlon*, 150 F.3d at 1020.

The Named Plaintiffs posit that they meet the typicality requirement here (at least for settlement purposes) because they allege that they, like the many other Class Members employed by Defendant, were not paid overtime because of Defendant's policy of classifying the LPM, APM and PM position as exempt regardless of any individualized factors.  The Named Plaintiffs thus believe their legal claims to be typical of those of the class as a whole because they apply the same legal theory to the same policies and practices.

### D.    **Adequacy**

Representation is adequate if (1) class counsel is qualified and competent and (2) the named plaintiffs and their counsel are not disqualified by conflicts of interests.  *Lerwil v. In-flight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).   Here, Class Counsel has substantial class action experience litigating, trying and settling wage and hour cases similar to this one.   Moreover, Class Counsel has been primarily responsible for litigating the claims at issue and has superior knowledge of the relevant facts and legal issues.

Likewise, the Named Plaintiffs have shown themselves to be adequate representatives of the class, as they share interests with the class and have pursued those interests vigorously. Named Plaintiffs have devoted time and effort in prosecuting the class claims including assisting counsel with investigating and litigating this lawsuit.

## 2. THE REQUIREMENTS FOR A CLASS UNDER FED. R. CIV. P. 23(B)(3) HAVE BEEN SATISFIED.

"[Rule 23(b)(3)] encompasses those cases in which a class action would achieve economies of time, effort and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Notes of Advisory Committee on Rules, 1966 Amendment. Class actions may be certified where common questions of law and fact predominate over questions affecting individual members and where a class action is superior to other means of adjudicating the controversy. The predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication. *Amchem Products, Inc.*, 521 U.S. at 623. The court must rest its examination on the legal or factual questions of the individual class members. *Hanlon*, 150 F.3d at 1022. Although Fed. R. Civ. P. 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues. *In re Sugar Industry Antitrust Litig.*, 73 F.R.D. 322, 344 (E.D. Pa. 1976). The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." *Hochschuler* v. *G.D. Searle & Co.,* 82 F.R.D. 339, 348- 49 (N.D. Ill. 1978); *Dietrich v. Bauer,* 192 F.R.D. 119, 127 (S.D.N.Y. 2000) (in determining whether common issues of fact predominate, "a court"s inquiry is directed primarily toward whether the issue of liability is common to members of the class"). Rule 23(b)(3) does not require that all questions of law or fact be common. *See In re Telectronics Pacing Systems,* 172 F.R.D. 271, 287-88 (S.D. Ohio 1997).

Here, it is the Named Plaintiffs' position that the alleged companywide policies affected the claims of Defendant's current and former LPMs, APMs and PMs. Thus, while there may be some variation between individual class member's claims, *i.e.*, such as the actual amount of damages, common questions of law and fact predominate, the Named Plaintiffs maintain that

24

these issues present common operative facts and common questions of law which predominate over any factual variations in the application of the classification and compensation policies to individual Class Members

The court must also consider if a class action is superior to individual suits. *Amchem*, 521 U.S. at 615. The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. Here, as in *Hanlon*, the alternative methods of resolution are individual claims for relatively small amount of damages. Plaintiffs thus contend that these claims would "prove uneconomic for potential plaintiffs" because "litigation costs would dwarf potential recovery." *Id.* at 1023. The Stipulation and Settlement Agreement provides members of the Settlement Classes with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that any injured member of the Settlement Classes will obtain necessary and timely relief at the conclusion of the litigation process.

The class action device could also conserve judicial resources by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims. Litigation costs would surely surpass the average recover for each class member.

For these reasons, a settlement class should be given final certification.

## VII.   THE COURT SHOULD GIVE FINAL APPROVAL TO THE SERVICE AWARDS TO THE NAMED PLAINTIFFS

The proposed service award of $5,000.00 to each of the two Named Plaintiffs is intended to recognize their initiative and efforts on behalf of the Class Members. The important contribution of the Named Plaintiffs is well noted. Each agreed to put his name on federal complaints, and each participated in the investigation and prosecution of this matter. Thus, a total of $10,000.00 will be deducted from the Maximum Settlement Amount to cover the service

25

awards.

Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incur during class action litigation. *McClain v. Lufkin Ind., Inc.*, No. 9:97CV63, 2009 WL 5814124 at *4 (E.D. Tex. Dec. 22, 2009). *See also* Herr, *Manual for Complex Litigation*, §30.42 (West Group 2001) (noting that such awards "may sometimes be warranted for time spent meeting with class members or responding to discovery"). As such, final approval should be given to the service awards preliminarily approved by this Court.

## VIII.   FINAL APPROVAL OF PAYMENT TO CAA IS WARRANTED

This Court approved and appointed CAA as the Claims Administrator in its August 12, 2013 Order. As discussed above, CAA was, among other things, responsible for verifying the addresses of members of the Settlement Classes, mailing the Class Notice and Claim Form Package to members of the Settlement Classes, calculating the estimated settlement payments to which members of the Settlement Classes may be entitled, receiving and approving the Claim Forms Packages, and responding to inquiries from members of the Settlement Classes. (Settlement Agreement, Dkt. 28-1, Section XII.C.) In addition, to the extent the settlement is given final approval, CAA will further be responsible for, among other things, distributing the payments provided for herein to Authorized Claimants, reporting the taxes and withholdings applicable to such payments, and performing such other duties as the parties may mutually direct or as are specified herein. (*Id.*). Plaintiffs respectfully request that this Court approve a payment of $33,400.00 to CAA, to be paid from the Maximum Gross Settlement Amount, for the services performed, and to be performed, by CAA in this case. This amount is reasonable and well-deserved.

IX.    **CONCLUSION**

For the foregoing reasons, the parties respectfully request that this Court grant this

Motion for Final Approval of Settlement.

Respectfully submitted,

By: */s/ Philip J. Gordon*
       Philip J. Gordon (BBO #630989)
       Kristen M. Hurley (BBO #658237)
       GORDON LAW GROUP LLP
       585 Boylston Street
       Boston, Massachusetts 02116
       (617) 536-1800

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**

By:  */s/ Michael A. Josephson*
       (pro hac vice)
       Michael A. Josephson
       Texas State Bar No. 24014780
       **FIBICH, HAMPTON, LEEBRON,**
       **BRIGGS & JOSEPHSON, L.L.P.**
       1150 Bissonnet
       Houston, Texas 77005
       713-751-0025 – Telephone
       713-751-0030 – Facsimile
       mjosephson@fhl-law.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS AND THE CLASS**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served by ECF electronic filing on all
known parties on January 21, 2014.

       */s/ Michael A. Josephson*
       Michael A. Josephson